Argued November 14, 1977, reversed and remanded January 23,
petition for review denied May 16, 1978

## STATE ex rel PERSHALL,
### *Appellant—Cross-Respondent,*
#### *v.*
## WOOLSEY, *Respondent—Cross-Appellant.*
### (No. P-76-6, CA 8131)
573 P2d 771

Al J. Laue, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were James A. Redden, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Dean Heiling, Roseburg, argued the cause for respondent. With him on the brief was Heiling & McIntosh, Roseburg.

Before Schwab, Chief Judge, and Buttler and Roberts, Judges.

BUTTLER, J.

## BUTTLER, J.

The state appeals from a judgment on a jury verdict in favor of respondent in a filiation proceeding (ORS 109.125 et seq) and assigns as error the admission in evidence, over petitioner's objection, of a letter from an Assistant Attorney General to defense counsel which, it is contended, contained prejudicial hearsay statements not excepted from the exclusionary rule. Respondent cross-appeals, claiming abuse of discretion in the amount of attorney's fees awarded to him; our disposition of the case makes it unnecessary to consider this matter.

The relevant part of the letter involved in this dispute is:

"On March 17, 1976, my investigator and myself interviewed James Cowan, the former boyfriend of the Petitioner. His testimony would substantiate that of the Petitioner's in that he did date Miss Pershall and had sexual relations with her.

"However, they ceased their relationship approximately in the middle of February, 1975. He has not had sexual intercourse with her after that date. Since the Petitioner would testify her last menstrual period was on or about April 14th, 1975, Mr. Cowan is ruled out as a possible father of the child."

In overruling petitioner's objection, the trial court stated:

"My understanding is that it was sent in connection with Mr. Heiling's preparation of his case for the defendant here, and I'm going to let it in for the limited purpose of showing its information that was provided to Mr. Heiling, and not for the truth of it necessarily.

"It will be received for that purpose."

After a further offer of the letter for the purpose of proving the truth of the matter asserted, the court stated:

"I think I've allowed the introduction for consideration of the jury and I haven't read it yet, Counsel, but I'm going to leave it as it is, as a statement made by Mr. Cannady [state's attorney] to you, Mr. Heiling."

[ 259 ]

While it may be possible to rationalize a theory on which the letter might be admissible without considering the truth of the matters asserted therein, none has been suggested. In fact, respondent relies upon the content of the letter in support of his contention that Mr. Cowan is the father of the child, and that petitioner is not telling the truth.

Petitioner argues that the letter is double hearsay. We agree. The letter itself is an out-of-court statement containing a report of another out-of-court statement. If the letter is admissible, it must be by virtue of an exception to the hearsay rule.

Since the letter does not purport to contain an admission by petitioner or a statement of facts within the independent knowledge of petitioner's counsel who wrote the letter, it does not fall within the exception recognized as a representative admission by a party. That exception, as discussed in McCormick, Evidence 644, § 267 (2d Ed E. Cleary 1972), is:

> "* * * The later cases, properly it seems, measure the authority of the attorney to make out-of-court admissions by the same tests of express or implied authority as would be applied to other agents, and when they meet these tests admit as evidentiary admissions the statements of attorneys in letters or oral conversations made in the course of efforts for the collection or resistance of claims, or negotiations for the settlement of suits or controversies, or the management of any other business in behalf of the client."

While it might be argued that the crucial sentence: "However, they ceased their relationship approximately in the middle of February, 1975," is an affirmation of the fact by petitioner's attorney, the context of the letter makes it clear that such a statement was not made of the attorney's own personal knowledge, but was only a repetition of what he was told by Mr. Cowan. Accordingly, the statement does not come within that exception.

Respondent argues that the statements made by the former boyfriend in the presence of petitioner's attorney are admissible under ORS 41.900(3).[1] The plain language of the statute is limited to statements made in the presence of the *party,* and the party's "conduct in relation thereto." No case interpreting the statute has applied it to a situation other than one involving statements made in the presence of a party giving rise to the party's opportunity to deny the matter stated, and we decline to do so here. *See,* e.g., *State v. O'Brien,* 262 Or 30, 32-34, 496 P2d 191 (1972), and cases cited therein; *State v. Chase,* 15 Or App 369, 373, 515 P2d 1337 (1973); *State v. Goodin,* 8 Or App 15, 28, 492 P2d 287 (1971), *rev den* (1972).

Accordingly, we hold that the statements of the former boyfriend, related in the letter, constitute inadmissible hearsay, and admission of the letter over objection was error. Whether the error was prejudicial requiring reversal, is another matter.

■ Respondent's defense was predicated upon the contention that petitioner's former boyfriend, Mr. Cowan, fathered the child. Petitioner testified that she first realized she was pregnant about the first of May, and that the child was conceived the latter part of April, during which period she had intercourse with respondent. While she admitted having had sexual relations with Mr. Cowan, she testified she saw him last in December, 1974. Respondent denied he had sexual relations with petitioner in April, and testified that petitioner had told him she had seen Mr. Cowan during the period of time conception occurred. Accordingly, not only does the content of the letter impeach petitioner, but it closes the gap between the last date petitioner had intercourse with Mr. Cowan and the

---

[1] ORS 41.900(3) provides:

"Evidence may be given of the following facts:

"* * * * *

"A declaration or act of another, in the presence and within the observation of a party, and his conduct in relation thereto."

[ 261 ]

supposed date of conception. As in most filiation proceedings, the credibility of the petitioner is of great importance. We cannot say that the discrepancy between her testimony that she last saw Mr. Cowan in December, 1974, and his statement that he had intercourse with her in mid-February, 1975, was not prejudicial in the context of this proceeding.

■ Respondent contends that even if the letter were inadmissible and might otherwise be prejudicial, there is no cause to reverse these proceedings because his motion to dismiss at the close of petitioner's case should have been granted on the ground that there was not sufficient corroboration to satisfy ORS 109.155(1).[2] In addition to petitioner's testimony, other witnesses testified that petitioner and respondent went to Portland during the period of probable conception and spent two nights in the same bed, and that respondent had made statements to petitioner's brother indicating he thought he was the father of the child. This testimony was sufficient to meet the requirement of the statute. *State v. Tokstad,* 139 Or 63, 8 P2d 86 (1932); *State ex rel S. v. V.,* 17 Or App 392, 521 P2d 1319 (1974).

Reversed and remanded.

---

[2] ORS 109.155(1) provides:

"The court or the jury, in a private hearing, shall first determine the issue of paternity. If the defendant admits the paternity, such admission shall be reduced to writing, verified by the defendant and filed with the court. If the paternity is denied, corroborating evidence, in addition to the testimony of the parent or expectant parent, shall be required."