Argued and submitted October 13, 1980,
affirmed March 23,
reconsideration granted; former opinion modified,
remanded for further proceedings (52 Or App 69, 627 P2d 520) May 4,
petition for review denied May 27, 1981 (291 Or 9)

STATE ex rel PERSHALL,
*Respondent,*

*v.*

WOOLSEY,
*Appellant.*

(No. P-76-6, CA 16221)

625 P2d 1340

Dean Heiling, Roseburg, argued the cause for appellant. With him on the briefs was Heiling & McIntosh, Roseburg.

John C. Bradley, Salem, argued the cause for respondent. With him on the brief were James M. Brown, Attorney General, John R. McCulloch, Jr., Solicitor General, and William F. Gary, Deputy Solicitor General, Salem.

Before Joseph, Presiding Judge, and Warden and Warren, Judges.

WARREN, J.

## WARREN, J.

Defendant appeals from a judgment in a filiation proceeding in which he was found to be the father of mother's child.[1] He assigns as error: (1) the trial court's rejection of defendant's offer of proof that mother had sexual intercourse with another man around the time of conception; and (2) the trial court's award for past and future child support, attorney fees, and medical costs in an amount exceeding defendant's ability to pay.

Mother's child was born on January 9, 1976. Mother testified that her last menstrual cycle was April 13-17, 1975, and that she first had sexual intercourse with defendant on April 18, 1975. She further testified that she and defendant had sexual intercourse on April 26, May 4, and regularly thereafter until August, 1975.

On direct examination of mother during her case-in-chief, she stated that before she met defendant she dated a man named James Cowan, but that they ended their relationship on December 25, 1974. She further stated that during March, April and May of 1975, she did not have sexual relations with any man other than defendant. In the subsequent cross-examination of mother by defendant she was asked:

"Q. Didn't you have sexual relations with Mr. Cowan at about the time of conception?

"A. No.

"Q. Do you recall when the last time was?

"MR. CANNADY: Objection.

"THE COURT: * * * I think the form of the question is wrong. I will sustain the objection.

"BY MR. HEILING:

"Q. All right, did you have sexual intercourse with Mr. Cowan?

"MR. CANNADY: Objection.

"THE COURT: Again, he has to limit it to a period. If the question involves the reasonable period of conception I will let you ask it. Otherwise you can't."

---

[1] This was the second trial in this case and was held before the same judge who sat in the first proceeding. We reversed the judgment in the first trial for the erroneous admission of prejudicial evidence and remanded the case for retrial. *State ex rel Pershall v. Woolsey*, 32 Or App 257, 573 P2d 771 (1978).

Thereupon, defendant, out of the presence of the jury, in an offer of proof elicited from the mother that she had sexual intercourse with Cowan up to the time they broke off their relationship in December, 1974. Defendant then represented to the court that defendant's witnesses would testify, contrary to the mother, that her relationship with Cowan continued past the period of conception, thus tying the alleged sexual contact with Cowan to the relevant period. The offer was rejected.

In a paternity suit, the mother's prior sexual conduct or general moral character is not an issue, and it is error to permit her to be questioned concerning it for the purpose of casting inferences of either general or specific immorality for the purpose of discrediting her. Evidence of sexual relations between the mother and men other than the defendant must be limited to the time surrounding the period of conception. *Thirdgill v. Williams,* 17 Or App 509, 522 P2d 911 (1974). Under the test established in *State ex rel Leonard v. Hogan,* 32 Or App 89, 92, 573 P2d 328 (1978), defendant may present evidence of sexual relations between the mother and a man other than the defendant before and after the date of conception "so long as the evidence relating to opportunity is tied to the time when conception occurred, and the inclination to engage in sexual intercourse spans that time period."

> " * * * [I]n a filiation proceeding, when there is evidence of an opportunity for sexual intercourse, at or about the time of conception, between the petitioner and a person other than the respondent, evidence that the petitioner had engaged in sexual intercourse with that other person before and after conception is relevant to the issue of paternity. A reasonable inference may be drawn by the trier of fact that the inclination and opportunity merged on the critical date." 32 Or App at 94.

It is apparent that defendant sought to prove that mother's sexual contact with Cowan continued until she last saw him. According to mother, that was in December, 1974, a time irrelevant to the case because it was outside the period of possible conception. According to defendant's representations to the court, mother had contact with Cowan before, during and after the critical period. The problem with defendant's offer of proof is that at the time he

attempted to establish mother's sexual relations with Cowan, there was no foundation tying the occurrence of their sexual contact to the period of conception. He intended to do that through defense witnesses in his own case-in-chief, but the trial court was not required to permit defendant to put on mother's testimony as part of defendant's case-in-chief in his cross-examination in mother's case. Nor was the trial court bound to accept defendant's assurances that he would put on evidence in his case-in-chief which would make relevant mother's admission that she had sexual relations with Cowan until the last time she saw him. Had defendant in his case-in-chief first called witnesses to testify that a relationship between Cowan and mother continued to and including the period of conception and then called mother and obtained testimony from her that she had sexual relations with Cowan up to the time their relationship terminated, the evidence would have been admissible under *State ex rel Leonard v. Hogan, supra.* That was not done.

■    The conduct of the trial and the order of proof is within the discretion of the trial court. As provided by the statute in effect at the time of the trial:

> "The order of proof shall be regulated by the sound discretion of the court. Ordinarily, the party beginning the case shall exhaust his evidence before the other begins." ORS 17.215, repealed Or Laws 1979, ch 284, § 199.

We conclude that the trial court did not abuse its discretion by refusing to permit the defense to put on its proof out of order.

■■    Under defendant's second assignment of error, his primary argument is that the court's award was unreasonable and excessive in light of defendant's ability to pay. The trial court ordered defendant to pay $75 per month child support; awarded the state a $3450 judgment for accrued support; awarded mother an $879 judgment for actual costs incurred in prenatal care and expenses; awarded the state a $225 judgment for costs incurred in obtaining blood tests to establish paternity; and awarded the state a $1000 judgment for attorney fees.

The pertinent statute provides:

"The court shall have the power to order the father to pay *such sum as it deems appropriate for the past and future support and maintenance of the child* during its minority and while the child is attending school *and* the *reasonable and necessary expenses incurred or to be incurred in connection with prenatal care,* expenses attendant with the *birth and postnatal care.* The court may grant the prevailing party *reasonable costs of suit,* including reasonable attorney fees." (Emphasis supplied.) ORS 109.155(4).

This section gives the trial court discretion to determine the amount of support that should be granted. *Fox v. Hohenshelt,* 19 Or App 617, 625, 528 P2d 1376 (1974). As we stated in *Fox,* at 629:

"In [a filiation] proceeding the court has the power to weigh all of the factors, including the needs of the child, the interests of the state, the amount of money already paid by the putative father under a contract or otherwise, and the mother's financial position. * * *"

There was evidence introduced at trial that defendant receives $670.24 per month in disability benefits. Although he contended that his monthly income does not meet his bills, we do not find that the trial court abused its discretion in ordering defendant to pay $75 per month for child support. Moreover, we find that the judgments awarded the state for costs for blood tests and for attorney fees and the judgment awarded mother for medical costs was for reasonable and necessary expenses. ORS 109.155(4).[2]

Affirmed.

---

[2] Defendant made several references in his brief to statements made by the trial judge during the hearing regarding defendant's ability to pay the judgments ordered. We generally do not go behind the terms of the written order, *State v. Swain/Goldsmith,* 267 Or 527, 530, 517 P2d 684 (1974); *Bell v. Arrant,* 36 Or App 795, 797, 585 P2d 744 (1978), and decline to do so here.